# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

VICTORIA M. THOMPSON and
JACLYN K. WADKINS,

                Plaintiffs,

v.

ELKHART LAKE'S ROAD AMERICA,
INC.,

                Defendant.

Case No. 15-CV-672-JPS

ORDER

In this civil suit, Plaintiffs Victoria Thompson and Jaclyn Wadkins allege discrimination on the basis of sex and retaliation for opposing unlawful employment practices against Defendant Elkhart Lake's Road America, Inc. ("Road America"), in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (Docket #1 at 3-6). This matter comes before the Count on Road America's motion for summary judgment filed on January 15, 2016. (Docket #16). On February 18, 2016, the plaintiffs filed their opposition (Docket #28), and, on March 3, 2016, Road America filed its reply (Docket #34). The motion is now fully briefed and ready for disposition. As discussed in detail below, the Court will deny Road America's motion for summary judgment, and this matter will proceed to trial.

1.     FACTUAL BACKGROUND[1]

    1.1     The Parties

Road America operates a racing facility in Elkhart Lake, Wisconsin, which includes a four-mile, 14-turn road race circuit. (DPFF ¶ 1). During the 2007 racing season, Road America employed Ms. Wadkins as part of its

---

[1]The cited facts are from the parties' proposed findings of fact, unless otherwise indicated. (Docket #23, #37).

security personnel. (PPFF ¶ 2).[2] Ms. Wadkins' mother, Ms. Thompson, began working for Road America in 2007 as a "tent sitter." (PPFF ¶ 1). In 2008, Ms. Thompson applied for a security position with Road America and was hired. (PPFF ¶ 3). Road America subsequently hired Ms. Thompson's other daughter, Jenny Reineking, into the security department at some point in the 2008 season. In approximately 2011, Ms. Thompson received a promotion to security supervisor. (PPFF ¶ 7). Following this promotion, Ms. Thompson served as a supervisor over both her daughters, Ms. Wadkins and Ms. Reineking, whenever they worked together. (PPFF ¶ 8).

Due to the nature of its business, Road America employs many seasonal workers. (DPFF ¶ 2). With the exception of the Director of Security, Dawn Klister, who oversees security functions, security employees are employed on a seasonal basis and do not work year round. (PPFF ¶ 4).

### 1.2    2013 Racing Season

During the 2013 racing season, Road America employed Ms. Thompson and Ms. Wadkins as seasonal employees on the its security team.[3] Ms. Thompson was a supervisor on the security team's night shift and Ms. Wadkins worked as a non-supervisory employee on the night shift. (PPFF ¶ 8). On August 7, 2013, Ms. Klister learned of an incident regarding a race competitor's package missing from one of the Road America buildings.

---

[2]The record is unclear when Ms. Wadkins started her employment with Road America. This fact, however, is not material to the issues presented at summary judgment.

[3]The Court notes that the record is silent as to any details regarding Ms. Thompson's and Ms. Wadkins' employment with Road America from 2008 to 2013.

(*See* DPFF ¶ 12).[4] After investigating the matter, Ms. Klister learned that, during the night shift on August 6 and August 7, 2013, Ms. Thompson and Ms. Wadkins took the race competitor's package and used the package to move and transport a wild raccoon. (DPFF ¶ 13).

Ms. Klister discussed this incident with Road America President, George Bruggenthies. (DPFF ¶ 14). During this discussion, Mr. Bruggenthies learned that Ms. Thompson was the mother of Ms. Wadkins and that Ms. Thompson supervised Ms. Wadkins on the night shift. (DPFF ¶ 15).

On June 22, 2013, Ms. Thompson was working as a security supervisor on the second shift. Ms. Klister called her to the security office and told her that Roger Jones, a new security supervisor, would be doing a ride-along with Ms. Thompson. (PPFF ¶ 14). The parties dispute the remaining facts in regards to Mr. Jones and the alleged sexual harassment, and thus the Court will not describe them at length. In sum, Ms. Thompson and Ms. Wadkins allege several incidents where Mr. Jones sexually harassed them; Road America disputes that Mr. Jones sexually harassed Ms. Thompson and Ms. Wadkins. (*See* PPFF ¶¶ 15-42). On July 1, 2013, Ms. Thompson met with Ms. Klister regarding some of the incidents, however, the parties dispute the exact nature of this discussion and any results from the discussion. (*See* PPFF ¶¶ 27-29). It is undisputed, however, that Ms. Klister worked with Mr. Jones at a previous employer and had known him for years before she hired him to work at Road America. (PPFF ¶ 30).

---

[4]The parties dispute the exact nature of this incident. Road America describes it as a "theft," whereas the plaintiffs describe it more as a misunderstanding.

On the morning of August 9, 2013, Ms. Thompson, Ms. Wadkins, and several members of the security team's night shift met with Ms. Klister to discuss the alleged sexual harassment incidents in regards to Mr. Jones. (*See* PPFF 43); (DPFF ¶¶ 19-20). The parties dispute the exact nature of this discussion, however, do not dispute that at some point during the discussion Ms. Klister spoke with Ms. Thompson in private. (*See* PPFF ¶ 46 (plaintiffs allege that Ms. Klister spoke alone with Ms. Wadkins as well, but Road America disputes this fact)). Following the August 9, 2013 meeting, Ms. Klister contacted Mr. Jones, advised Mr. Jones that he was suspended pending an investigation, and conducted an investigation. (DPFF ¶ 21).

On August 20, 2013, Ms. Klister sent an email message to all security department employees advising them that effective immediately, "Members of the same immediate family will not work together at the same time in the same department at Road America." (DPFF ¶ 17). The first time that security employees ever received a copy of the Employee Handbook was when it was attached to Ms. Klister's August 20, 2013 email message restricting immediate family members from working together (PPFF ¶ 49). Ms. Thompson, Ms. Wadkins and Ms. Reineking regularly worked together on the same shift as security employees despite their family relationship throughout each of the seasons they worked for Road America until the August 20, 2013 email. (PPFF ¶ 51). Throughout their employment, Ms. Klister was aware that Ms. Thompson, Ms. Wadkins and Ms. Reineking were mother and daughters. (PPFF ¶ 52). Greg Wieser, Director of Operations for Road America, was also aware that Ms. Thompson and Ms. Wadkins were mother and daughter. (PPFF ¶ 53).

Following the August 20, 2013 email, Ms. Klister reached out to Ms. Thompson and Ms. Wadkins to work with them to adjust their schedules to be consistent with the policy; Ms. Thompson and Ms. Wadkins did not respond to Ms. Klister. (DPFF ¶ 18). On August 28, 2013, Mr. Wieser and Mr. Bruggenthies met with Ms. Thompson and both her daughters. (PPFF ¶ 73). The plaintiffs allege that they discussed the policy prohibiting family members from working together at this meeting, however, Road America disputes this allegation. (Response to PPFF ¶ 73).

After receiving Ms. Klister's email message, Ms. Thompson asked for clarification as to whether she and her daughters would be permitted to work together if she stepped down from her position as supervisor. (PPFF ¶ 58). On September 3, 2013, Mr. Wieser responded to Ms. Thompson in order to clarify Road America's interpretation of the policy regarding family members working together. Mr. Wieser responded that, if Ms. Thompson stepped down as supervisor, then: if one to three guards were scheduled, one family member could work; if four to seven guards were scheduled, two family members could work; and, if eight or more guards were scheduled, all three family members could work. (PPFF ¶ 59).

On August 29, 2013, Road America concluded its investigation regarding the allegations related to Mr. Jones. (DPFF ¶ 22).

### 1.3 Medical Leave Requests

On August 28, 2013, Ms. Thompson was a part of a meeting with Mr. Bruggenthies and Mr. Wieser. (DPFF ¶ 24). In this meeting, Ms. Thompson requested a medical leave of absence. (DPFF ¶ 25). The parties dispute, however, whether Road America granted the leave of absence. Mr. Wieser responded, "okay," to Ms. Thompson's request, however, Ms. Thompson maintains she did not understand this verbal interaction to formally grant

her a medical leave of absence. (Response to DPFF 25). The parties dispute whether Road America sent Ms. Thompson Family Medical Leave Act papers. (Response PPFF ¶ 78).

Ms. Wadkins was scheduled to work at Road America on September 4, 2013. (DPFF ¶ 28). Mr. Wieser sent Ms. Wadkins an email on September 4, 2013, regarding her scheduled work shift, and Ms. Wadkins replied to the email, stating in part, "I am requesting a medical leave under the family medical leave act." (DPFF ¶¶ 29-30). The parties similarly dispute whether Road America ever sent Ms. Wadkins any Family Medical Leave Act papers. (Response PPFF ¶ 80). Ms. Wadkins never informed Road America that she was medically available to return to work and Ms. Wadkins never contacted Road America again. (DPFF ¶ 31).

### 1.4    2014 Racing Season

Road America sent an invitation to both Ms. Thompson and Ms. Wadkins to attend the security team's holiday party in January of 2014. (DPFF 32). Neither Ms. Thompson nor Ms. Wadkins attended the holiday party or responded to the invitation. (DPFF 33). Neither Ms. Thompson nor Ms. Wadkins contacted Road America to request to work as seasonal employees during the 2014 racing season. (DPFF ¶ 34). Road America did not invite either Ms. Thompson or Ms. Wadkins to work as seasonal employees during the 2014 racing season. (DPFF ¶ 35). The parties dispute the reason as to why Road America did not invite the plaintiffs back to work the next season. The plaintiffs allege that they were not invited back as retaliation for complaining of the sexual harassment, whereas Road America maintains that the plaintiffs did not receive an invitation to work the following year because they never informed Road America that they were able to return to work from medical leave. It is undisputed, however, that before the sexual

Case 2:15-cv-00672-JPS    Filed 04/15/16    Page 6 of 21    Document 35

harassment reports in 2013, the plaintiffs had been invited back to work each subsequent season, regardless of whether they made contact with Road America or Ms. Klister in the off season (PPFF ¶ 86).

    1.5    Relevant Bankruptcy Proceedings

Ms. Wadkins's Chapter 13 Bankruptcy, filed September 24, 2013, remains open with an Order Confirming Modified Plan being entered on August 14, 2015. (DPFF ¶ 39). Ms. Wadkins had not yet filed her charge against Road America at the time of her original bankruptcy filing in September 2013. Ms. Wadkins' charge against Road America was first filed with the Wisconsin Equal Rights Division on June 4, 2014. (PPFF ¶ 94). Prior to Road America's motion for summary judgment, Ms. Wadkins had not listed her claim in this case as an asset in her Chapter 13 Bankruptcy. (*See* DPFF ¶ 40). On January 26, 2016, Ms. Wadkins and her husband, joint debtors in Chapter 13, amended their bankruptcy schedules to reflect her claim against Road America. (PPFF ¶ 92).

On April 28, 2014, Ms. Thompson filed a Discrimination Complaint against Road America with the Wisconsin Department of Workforce Development — Equal Rights Division. This Discrimination Complaint was also cross-filed with the Equal Employment Opportunity Commission. (DPFF ¶ 41). On February 24, 2015, Ms. Thompson received an Initial Determination —Probable Cause from the Equal Rights Division. (DPFF ¶ 42). On April 14, 2015, Ms. Thompson, without her spouse, filed a Voluntary Petition for Chapter 7 Bankruptcy ("2015 Bankruptcy"). (DPFF ¶ 43). Ms. Thompson signed the April 14, 2015 Voluntary Petition under penalty of perjury that "the information provided in this petition is true and correct." (DPFF ¶ 44.). Schedule B of the April 14, 2015 Voluntary Petition required Ms. Thompson to list "Other contingent and unliquidated claims of every nature..." —

Ms. Thompson checked "NONE." (DPFF ¶ 46). Ms. Thompson did not list her claims in this case in her April 14, 2015 Voluntary Petition. (DPFF ¶ 45). Section 4 of the Statement of Financial Affairs section of the April 14, 2015 Voluntary Petition required Ms. Thompson to list "…all suits and administrative proceedings to which the debtor is or was a party within one year immediately proceeding the filing of this bankruptcy case…"— Ms. Thompson listed only a Sheboygan County Circuit Court case which is unrelated to the above-captioned action. (DPFF ¶ 47). On May 28, 2015, the Bankruptcy Trustee for Ms. Thompson's 2015 Bankruptcy filed the "Chapter 7 Trustee's Report of No Distribution" which, among other things, noted that Ms. Thompson's estate had been fully administered and that the trustee requested to be discharged from any further duties. (DPFF ¶ 48). On June 3, 2015, Ms. Thompson filed her claims in this action. (DPFF ¶ 49). Ms. Thompson was represented by legal counsel in her 2015 Bankruptcy, and it was her fourth bankruptcy. (DPFF ¶¶ 49-50). On January 26, 2016, Ms. Thompson amended her bankruptcy schedules from her 2015 Chapter 7 bankruptcy to reflect her claim against Road America. (PPFF ¶ 87).

2.    LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

3.     DISCUSSION

Road America's motion for summary judgment argues that: (1) judicial estoppel should apply here to preclude all the plaintiffs' claims; and (2) alternatively, that the retaliation claims cannot stand because the plaintiffs did not suffer an adverse employment action that was caused by their protected activity. (Docket #17).[5] The plaintiffs oppose the motion and argue that judicial estoppel is inappropriate in this case and that factual disputes exist such that a rational jury could conclude that Road America retaliated against them for their protected activity. (Docket #28). As discussed below, the Court finds that: (1) judicial estoppel is inappropriate here; and (2) material issues of fact exist to preclude summary judgment on the retaliation claims.

---

[5]Road America acknowledges that the parties dispute factual issues related to the sexual harassment allegations and, thus, does not address that claim in its motion for summary judgment. (Docket #17 at 1).

### 3.1    Judicial Estoppel

Road America argues that both plaintiffs should be judicially estopped from bringing their claims. Ms. Thompson and Ms. Wadkins both failed to disclose this litigation as an asset in their separate bankruptcy proceedings, and, as such, should be precluded from proceeding on the claims. (Docket #17 at 2-4).[6]

The doctrine of judicial estoppel prevents litigants from manipulating the judicial system by prevailing in different cases or phases of a case by adopting inconsistent positions. *Spaine v. Cmty. Contacts, Inc.,* 756 F.3d 542, 547 (7th Cir. 2014) (citing *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001); *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 795 (7th Cir. 2013) (affirming application of judicial estoppel); *Walton v. Bayer Corp.*, 643 F.3d 994, 1002 (7th Cir. 2011)). Manipulation may occur when a debtor deliberately conceals a contingent or unliquidated claim during bankruptcy proceedings and then later seeks to profit from that claim after obtaining a discharge of her debts. *See Cannon–Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006). Judicial estoppel is a flexible doctrine that is within the Court's discretion to apply. *Grochocinski*, 719 F.3d at 795.

As described above, the principal facts related to Ms. Thompson and Ms. Wadkins bankruptcy filings are undisputed. Ms. Wadkins' Chapter 13 Bankruptcy, filed September 24, 2013, remains open with an Order Confirming Modified Plan being entered on August 14, 2015. (DPFF ¶ 39).

---

[6]Initially, Road America also argued that Ms. Wadkins lacked standing to pursue her claim. (Docket #17 at 2). However, it failed to address this issue at all in its opening brief and in its reply brief, Road America acknowledged that standing is no longer an issue. (Docket #34 at 2) (noting that amendment to bankruptcy schedules "resolves the issue of standing." As such, the Court need not address this issue any further.

Prior to Road America's motion for summary judgment, Ms. Wadkins had not listed her claim in this case as an asset in her Chapter 13 Bankruptcy. (*See* DPFF ¶ 40). On January 26, 2016, Ms. Wadkins and her husband, joint debtors in Chapter 13, amended their bankruptcy schedules to reflect her claim against Road America. (PPFF ¶ 92).

Similarly, Ms. Thompson filed a Voluntary Petition for Chapter 7 Bankruptcy on April 15, 2015. (DPFF ¶ 43). Ms. Thompson did not list her claims in this case in her April 14, 2015 Voluntary Petition. Instead, she listed only a Sheboygan County Circuit Court case that is unrelated to this action. (DPFF ¶¶ 45, 47). Ms. Thompson was represented by legal counsel in her 2015 Bankruptcy, and it was her fourth bankruptcy. (DPFF ¶¶ 49-50). On January 26, 2016, Ms. Thompson amended her bankruptcy schedules from her 2015 Chapter 7 bankruptcy to reflect her claim against Road America. (PPFF ¶ 87).

The Court finds that judicial estoppel is not warranted in this case to bar the plaintiffs' claims against Road America because there is insufficient evidence in the record as to any intentional deceit or concealment by the plaintiffs. *See Jaeger v. Clear Wing Productions, Inc.,* 465 F. Supp. 2d 879, 882 (S.D. Ill. 2006) ("The doctrine of judicial estoppel, which protects the integrity of the judicial process, should be invoked when a party abuses the judicial forum or process by making a knowing misrepresentation to the court or perpetrating a fraud on the court.") (internal citation omitted). Undoubtably, the plaintiffs erred in not immediately disclosing their claims against Road America in their bankruptcy proceedings, however, the plaintiffs have now corrected this error in amending their bankruptcy proceedings.

In *Cannon-Stokes*, the Court focused on whether the plaintiff was making an "honest attempt" to pay her debts. 453 F.3d at 448. The Court ultimately concluded that the plaintiff's failure to reopen her bankruptcy demonstrated that she was not attempting to make such an effort:

> And if Cannon-Stokes were really making an honest attempt to pay her debts, then as soon as she realized that it had been omitted, she would have filed amended schedules and moved to reopen the bankruptcy, so that the creditors could benefit from any recovery. Cannon-Stokes never did that; she wants every penny of the judgment for herself.

*Id.* Here, unlike in *Cannon-Stokes,* the plaintiffs' amendment of their bankruptcy proceedings shows an effort to pay their debts so that the creditors could benefit from any recovery.

Road America argues that the record in this case demonstrates an intent to conceal. The Court disagrees. Road America highlights a proceeding where Ms. Thompson was asked, "Does anybody owe you any money or could you sue anyone for any reason at all?" Ms. Thompson replied, under oath, "No." (Docket #34 at 3). Six days following this testimony, on June 3, 2015, Ms. Thompson filed this lawsuit. (Docket #1). Road America further points to Ms. Thompson's discovery responses in November 2015 which failed to list her 2015 bankruptcy in response to a question about whether she had ever been a party to another legal proceeding. Road America argues that the judicial estoppel is appropriate here because a "ruling in Ms. Thompson's favor would suggest to other debtors that they should consider disclosing potential assets only after they are caught concealing them." (Docket #34 at 4-5).

Without more, the Court is unconvinced that the record before it demonstrates an intent to conceal by the plaintiffs. Although the record is clear that the plaintiffs omitted information regarding their bankruptcies on several occasions, the record does not contain any facts that the omission was necessarily intentional. Some omissions "will be innocent—based on poor communication between bankruptcy counsel and tort counsel, or based on a belief that the tort claim will not be valuable—and should not be punished." *Metrou v. M.A. Mortenson Co.*, 781 F.3d 357, 360 (7th Cir. 2015). Here, although Ms. Thompson was represented by counsel in her 2015 bankruptcy as well as in this action, is it entirely possible that the omission of claims against Road America in the bankruptcy case was inadvertent. Similarly, Ms. Wadkins' Chapter 13 bankruptcy had already been filed well before this action, and there is nothing in the record to show her failure to amend was intentional. To be sure, there is a possibility that the failure to disclose was intentional, however, without more concrete evidence, the Court declines to apply judicial estoppel to prevent the plaintiffs' Title VII claims from proceeding in this action.

Further, the Court finds that allowing judicial estoppel to preclude the claims in this case may have the opposite effect of serving the equitable principal enshrined in the doctrine of judicial estoppel. If the Court were to allow judicial estoppel to bar the plaintiffs' claims, it may have the effect of preventing creditors from sharing in any potential recovery in this case. This unintended consequence may then have the effect of harming third-party creditors who have an interest in the outcome of this action.

Thus, in light of the fact that the plaintiffs amended their bankruptcy filings to disclose their claims against Road America, and the fact that there

is no evidence proving an intent to conceal, the Court declines to apply judicial estoppel in this instance to bar the plaintiffs' claims.

### 3.2 Retaliation Claims

Title VII prohibits retaliating against an employee "because he has opposed any practice made an unlawful employment practice by [this subchapter,] or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [this subchapter.]" 42 U.S.C. § 2000e–3(a); *Loudermilk v. Best Pallet Co.*, 636 F. 3d 312, 315-16 (7th Cir. 2011). To prevail on a retaliation claim, the plaintiffs must prove that: (1) they engaged in a statutorily-protected activity; (2) they suffered a materially adverse action by Road America; and (3) a causal connection exists between the two. *Porter v. City of Chicago*, 700 F.3d 944, 957 (7th Cir. 2012) (citing *Benuzzi v. Bd. of Educ. of City of Chicago*, 647 F.3d 652, 664 (7th Cir. 2011)); *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009). Similar to a discrimination claim, circumstantial evidence of intentional retaliation includes suspicious timing, ambiguous statements, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn. *Salas v. Wisconsin Dept. of Corrections*, 493 F.3d 913, 924 (7th Cir. 2007).[7]

---

[7]The Court notes that there are two recognized "methods" by which a plaintiff can pursue a retaliation claim under Title VII. *Hobgood v. Illinois Gaming Bd.*, 731 F.3d 635, 641 (7th Cir. 2013). The indirect method, or *McDonnell Douglas* test, and the direct method. *Id.* Neither party in this case specifically directs the Court to which method they argue under. However, based on the parties' arguments, it is apparent that they proceed under the direct method described above. Thus, the Court need not discuss the indirect method.

Case 2:15-cv-00672-JPS   Filed 04/15/16   Page 14 of 21   Document 35

The parties do not dispute that the plaintiffs engaged in statutorily-protected activity when they reported allegations of sexual harassment to Road America. Road America maintains, however, that the plaintiffs' retaliation claims must fail because there was no adverse employment action taken against them, or, alternatively, that even if there was adverse action taken, there is no causal link between the protected activity and adverse action. The Court will discuss each argument in turn.

### 3.2.1   Adverse Employment Action

Materially adverse actions are those that might dissuade a reasonable employee from engaging in protected activity. *Benuzzi v. Bd. of Educ. of City of Chicago*, 647 F.3d 652, 664 (7th Cir. 2011) (citing *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006)). An adverse employment action is "more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Traylor v. Brown*, 295 F.3d 783, 788 (7th Cir. 2002).

Here, the plaintiffs both point to two adverse employment actions that occurred after they reported the sexual harassment incident. First, they point to Road America's change in policy that prohibited family members from working the same shift in the same department. Second, they point to the fact that they were essentially terminated from their jobs when Road America did not invite them back to work for the 2014 race season. Road America argues that no adverse employment action occurred because: (1) the plaintiffs were not harmed by the enforcement of the employment of relatives policy; and (2) Road America never terminated the plaintiffs' employment, but rather the

plaintiffs simply never returned from medical leaves of absence. (Docket #17 at 5-6).

The Court finds that material issues of fact exist as to whether the plaintiffs' indeed suffered adverse employment actions. As to the family employee policy, the plaintiffs maintain that Road America began to enforce the existing family employee policy and further modified it to punish them for reporting sexual harassment. Road America, instead, argues that this change in policy was the result of the "theft" on August 7, 2013, that involved both plaintiffs, and had nothing to do with the sexual harassment reports. Although the family employee policy existed since at least 2012, the policy had never been enforced—evidenced by the fact that Ms. Thompson appears to have supervised her daughter, Ms. Wadkins, for several years in the same department without any problems. The extent to which the plaintiffs may have been harmed by the enforcement of the policy—*i.e.* whether it would have resulted in a reduced number of hours or overall pay—is unclear because the plaintiffs shortly thereafter stopped working for Road America.[8] If Ms. Thompson was required to step down in her role as supervisor to work the same shift as her daughters, though, the Court can only assume that a decrease in pay may have been a possibility. Thus, the parties dispute the material facts regarding whether the plaintiffs suffered an adverse action in regards to the family employee policy.

Further, the Court finds material issues of fact exist as to the plaintiff's alleged termination from Road America. There is no question that termination from employment would constitute an adverse employment

---

[8]The Court notes that the record is unclear as to the date of when the 2013 racing season ended. Whether the plaintiffs may have continued working into the fall, if not for their medical leave of absences, is not evidenced in the record.

Case 2:15-cv-00672-JPS   Filed 04/15/16   Page 16 of 21   Document 35

action that would dissuade a person from engaging in protected activity. Road America maintains that the plaintiffs took medical leave and were never terminated, whereas the plaintiffs maintain that Road America chose not to invite them back to work. The parties dispute nearly all the facts surrounding the plaintiffs' medical leaves of absence, such as whether Ms. Thompson or Ms. Wadkins ever actually went on official medical leave. (*See* Response to DPFF ¶ 31) (noting that Road America never sent Ms. Wadkins any forms to fill out in connection with her medical leave request). It is undisputed that despite receiving an invitation to work each year after their initial employment, neither Ms. Thompson nor Ms. Wadkins received an invitation to work at Road America for the 2014 season. When taking the facts in the light most favorable to the plaintiffs, as the Court must, it finds that a reasonable jury could find that the plaintiffs suffered an adverse employment action. Thus, the Court finds that summary judgment is improper on this ground, and turns to the issue of causation.

### 3.2.2  Causal Link

In turning to the third prong, the remaining question is whether the plaintiffs have evidence that the enforcement of the family policy and ensuing termination was caused by their protected activity. To survive summary judgment, the plaintiffs need evidence from which a reasonable jury could find that Road America decided to change the family employee policy and terminate their employment because they reported sexual harassment activity. *See University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. __, 133 S. Ct. 2517 (2013) (Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action); *Greene*, 660 F.3d at 978–79. Direct evidence of causation—to be easily confused with the direct method under which such

Case 2:15-cv-00672-JPS   Filed 04/15/16   Page 17 of 21   Document 35

evidence would be presented—would require something akin to an admission from Road America that it took action against the plaintiffs because of their protected activity. *See Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006). Such admissions of illegal discrimination and retaliation are rare, so it is not surprising that the plaintiffs have not presented a "smoking gun" confession by Road America.

There is another evidentiary route to satisfy the direct method, however, and that is the route the plaintiffs pursue, albeit not expressly. The plaintiffs may satisfy the direct method using what this circuit has termed a "'convincing mosaic' of circumstantial evidence," *Rhodes v. Illinois Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004), quoting *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994), by relying on evidence of "suspicious timing, ambiguous statements oral or written, …and other bits and pieces from which an inference of [retaliatory] intent might be drawn." *Coleman*, 667 F.3d at 860 (internal quotation marks and citations omitted) (alterations in original). In other words, the plaintiffs must present admissible evidence that, when taken as a whole and viewed in a light favorable to their case, could convince a reasonable jury that they were the victims of unlawful retaliation.

A convincing mosaic must include evidence from which an inference of retaliatory intent could be drawn, and our cases often recite the following shorthand for circumstantial evidence, noting that a plaintiff's case could include: "(1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action." *See Teruggi*

*v. CIT Group/Capital Finance, Inc.*, 709 F.3d 654, 659–60 (7th Cir. 2013) (quoting *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011)); *Diaz v. Kraft Foods Global, Inc.*, 653 F.3d 582, 586–87 (7th Cir. 2011).

As evidence of retaliation, the plaintiffs point to suspicious timing—almost immediately after the plaintiffs complained about the sexual harassment on August 9, 2013, Road America sent all security employees the August 20, 2013 email message advising that "effective immediately, Members of the same immediate family will not work together at the same time in the same department at Road America." Road America is correct that temporal proximity alone is generally not sufficient to imply causation and create a triable issue of fact. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 703 F.3d 966, 974 (7th Cir. 2012).

In addition to the evidence of suspicious timing, however, the plaintiffs point to the additional fact that Road America's email clarification concerning the policy contradicted the actual language of the employee handbook, and that when Ms. Thompson requested permission to publish the clarification for the rest of security, Mr. Bruggenthies rejected her request. (PPFF ¶ 60). The record further reflects that, during the 2014 racing season, Road America repeatedly allowed members of the same family to work the same shift in the security department—in direct contradiction to the September 2013 clarification of the policy. (*See* PPFF 61). It is certainly possible that a jury may side with Road America and find its justification—that it enforced the family employee policy as a result of the August 7, 2013 "theft" incident—as credible, and that Road America's decision indeed had nothing to do with the sexual harassment report. However, in viewing the facts most favorable to the plaintiffs, as it must, the Court finds that a reasonable jury may conclude that retaliation for the sexual

harassment report was a but-for cause for the enforcement and modification of the family employee policy.

Additionally, the Court finds that material issues of fact exist in relation to Road America's decision not to invite the plaintiffs back to work for the 2014 racing season. As discussed above, the parties dispute many of the facts in relation to the plaintiff's medical leave requests. Road America relies on the fact that the plaintiffs never contacted them to come back to work. However, as the plaintiffs point out, neither Ms. Thompson nor Ms. Wadkins was ever required in prior off-seasons to indicate their intention to return for the subsequent year; instead, they normally indicated their interest to continue their employment upon receiving the contact information sheet Ms. Klister sent out in spring before the season began. (PPFF ¶ 86).

The Court finds that there are enough bits and pieces in this case to create a convincing mosaic such that an inference of retaliatory intent could be drawn from these facts. Indeed, the plaintiffs may not have the strongest retaliation claim in light of the other possible explanations for Road America's actions in this case. However, it will be for the jury to decide whether Road America's conduct was justified or instead was retaliation for the plaintiffs reporting incidents of sexual harassment. Thus, the Court will deny Road America's motion for summary judgment on the plaintiffs' retaliation claims.

4.      CONCLUSION

In sum, the Court finds that judicial estoppel is inappropriate in light of the plaintiffs' disclosure of this action in their bankruptcy proceedings. Further, the Court finds that material issues of fact exist such that a reasonable jury could find Road America retaliated against the plaintiffs for the protected activity of reporting incidents of sexual harassment. As such,

the Court will deny Road America's motion for summary judgment, and this matter will proceed to trial.

Accordingly,

IT IS ORDERED that Road America's motion for summary judgment (Docket #16) be and the same is hereby DENIED.

Dated at Milwaukee, Wisconsin, this 15th day of April, 2016.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge